<u>NOT FOR PUBLICATION</u> [Doc. No. 19]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| RANDOLPH BETHUNE,<br><br>        Plaintiff,<br><br>  v.<br><br>COUNTY OF CAPE MAY, JOHN F. CALLINAN, RICHARD P. HARRON, SHERRY R. LACHICA, JOHN YOHN, JOSEPH TALLERICO, CHARLES MAGILL, JOHN DOE,<br><br>        Defendants. | Civil No. 08-5738 (RMB/KMW)<br><br>**OPINION** |

Appearances:

    Thomas Matthew Barron
    Barron & Posternock, LLP
    400 N. Church Street
    Suite 250
    Moorsetown, NJ 08057
        Attorneys for Plaintiff

    Judson B. Barrett
    Barret and Pavluk, LLC
    1200 Eagle Avenue
    Suite 204
    Ocean, NJ 07712
        Attorneys for Defendant

**BUMB**, United States District Judge:

    Defendants County of Cape May, John F. Callinan, Richard P. Harron, Sherry R. LaChica, Charles Magill, Joseph Tallerico and John Yohn (collectively "Defendants") move for summary judgment dismissing the Complaint filed by Randolph Bethune ("Plaintiff"). Plaintiff concedes his claims against the County of Cape May,

1

Sheriff John Callinan and Warden Richard Harron.  Accordingly, the motion is granted as to these Defendants, and Plaintiff's claims against these Defendants are dismissed with prejudice. For the following reasons, Defendants' motion as to the remaining Defendants is denied.

I.  **Statement of the Facts**

   A.  **July 28 Incident**

On July 28, 2007, Plaintiff was incarcerated at the Cape May County Correctional Center (hereafter "Correctional Center") as a pre-trial detainee.  (Defendants' Statement of Undisputed Facts ("Def. SOF") ¶ 1; Plaintiff's Response Statement of Facts ("Pl. Resp. SOF") ¶ 1.)  At approximately 8:00 a.m., Defendant Corrections Officer Sherry R. LaChica (hereafter "CO LaChica") escorted Plaintiff and another inmate from the medical department.  Def. SOF ¶ 2; Plaintiff's Counter Statement of Material Facts ("Pl. SOF") ¶ 22).  The parties dispute what happened as the trio left the medical department.  A video depicts some of the incident giving rise to Plaintiff's Complaint.  See Def. Ex. C.

Defendants maintain that Plaintiff resisted CO LaChica in a threatening manner and that Plaintiff raised his arm in a provocative manner.  Def. SOF ¶ 2.  When CO LaChica attempted to restrain Plaintiff with a compliance hold, he resisted and caused a "Code Blue" to issue.  Id.  The other Defendant Corrections Officers responded to subdue Plaintiff.  Id.

2

Plaintiff asserts that as he was leaving the medical department, he spoke to a nurse about a medical complaint. Pl. SOF ¶ 21. He maintains that he was completely compliant with CO LaChica's instructions when CO LaChica put her arm on Plaintiff's shoulder and pushed Plaintiff with her left hand, telling him "come on, let's go." Id.; Pl. Resp. SOF ¶ 2. Plaintiff turned to look at CO LaChica. Pl. Resp. SOF ¶ 2. CO LaChica then grabbed Plaintiff's arm and pushed his body and face toward a concrete wall. Id. The other Defendant Corrections Officers John Yohn, Joseph Tallerico and Charles Magill ran toward Plaintiff and threw him to the floor, where they began to beat and kick Plaintiff while he was handcuffed. Pl. SOF ¶ 22. Plaintiff maintains that he did not resist the Defendant Officers. Id. at ¶ 26. The Defendant Corrections Officers then dragged Plaintiff to solitary confinement, where he was forced to sleep on a concrete floor without bedding. Id. at ¶ 23.

The matter was referred to the Cape May County Prosecutor's Office, but no charges were brought against the Defendant Officers. Def. SOF ¶¶ 15-16.

A disciplinary hearing was held on July 30, 2007 regarding the incident. Def. SOF ¶ 5. At the hearing, Plaintiff testified:

> I am guilty of telling the woman to get her hands off of me. She has no right to put her hands on me. I have P.T.S.S. (Post Traumatic Stress Syndrome) from the war and I could go off at any time. You're [sic] officers shouldn't touch me because I have this problem.

3

Id.  Plaintiff pled guilty to conduct which disrupts the normal running of an institution.  Id. at 6; Pl. Resp. SOF ¶ 6.

## II. Standard

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"If the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'"  Id. (quoting Wetzel v. Tucker, 139 F.3d 380, 383 n. 2 (3d Cir. 1998)).  Upon such a showing, the burden shifts to the non-moving party to produce evidence of a genuine, factual dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The non-movant's burden is rigorous:  it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture and speculation will not defeat summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995).

When considering a summary judgment motion, the Court does not weigh evidence; rather, all reasonable "inferences, doubts,

and issues of credibility should be resolved against the moving party." Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n. 2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine issue for trial. Anderson, 477 U.S. at 252. Summary judgment is appropriate "where the record ... could not lead a rational trier of fact to find for the nonmoving party...." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a "fair-minded" jury could "reasonably" decide,'...." Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (quoting Anderson, 477 U.S. at 265 (Brennan, J., dissenting)).

**III.  Analysis**

Count One of Plaintiff's Complaint states an excessive force claim[1] against Defendant Corrections Officers LaChica, Yohn, Tallerico and Magill in violation of rights guaranteed Plaintiff, as a pretrial detainee, by the Fourteenth Amendment.[2]  See Compl.

---

[1] Plaintiff argued in his opposition brief that the Defendants violated Plaintiff's constitutional rights by failing to intervene and protect Plaintiff. See Opp. Br. at 37. However, at oral argument, counsel for Plaintiff confirmed that his claim is one for excessive force only. Moreover, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)(quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)).

[2] In Count One, Plaintiff also alleged violations of the Fourth and Fifth Amendments. But given that Plaintiff identifies himself as a pretrial detainee, the claim is properly analyzed

¶ 9.

Courts recognize that officers "performing discretionary functions are immune 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lamont ex rel. Estate of Quick v. New Jersey, 637 F.3d 177, 182 (3d Cir. 2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "To determine whether an officer is qualifiedly immune from suit," courts ask two questions: "(1) whether the officer violated a constitutional right, and (2) whether the right was clearly established, such that "it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001)). As for this second question, the Court's inquiry is whether the right at issue was clearly established in a particularized sense, such that "a reasonable official would [have understood] that what he [wa]s doing violate[d] that right." Id. (quoting Anderson v.

---

under the Due Process clause of the Fourteenth Amendment, applying the standard governing Eighth Amendment cruel and unusual punishment claims. See Smith v. Addy, 343 Fed.Appx. 806, 808-09 (3d Cir. 2009). By contrast, "the Fourth Amendment...is properly applied in excessive force claims arising from investigatory stops and/or arrests," i.e., circumstances not alleged here. Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000). Moreover, "'[t]he limitations of the [F]ifth [A]mendment restrict only federal governmental action....'" Myers v. County of Somerset, 515 F.Supp.2d 492, 504 (D.N.J. 2007) (quoting Nguyen v. U.S. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983)). There is no dispute that the Defendants were state actors.

6

Creighton, 483 U.S. 635, 640 (1987)).

Although the Court has discretion as to which issue to address first, Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 818 (2009), the Court begins by determining whether Defendants violated Plaintiff's constitutional rights. "The primary step in assessing the constitutionality of the officers' alleged actions is to determine the relevant facts." Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009)(citing Scott v. Harris, 550 U.S. 372, 378 (2007)). In conducting its qualified immunity analysis, the Court "[is] required to view the facts in the light most favorable to the plaintiff." Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001); Scott, 550 U.S. at 378).

The test for whether a claim of excessive force is constitutionally actionable is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 319 (1986). Courts consider:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Giles, 571 F.3d at 326-27.

Here, crediting Plaintiff's version of the incident, Plaintiff turned toward CO LaChica in response to an unnecessary

7

push, raising his arm to chest level to remove her hand. He also avers that he placed his hands against the wall to prevent his face from being slammed. In support of his claims, Plaintiff submits, inter alia, his deposition testimony as well as a video of the incident.

Considering the Giles factors set forth above, and construing all inferences in Plaintiff's favor, the Court holds that an issue of fact exists as to whether Plaintiff continued to resist CO LaChica when he was placed up against the wall. Thus, summary judgment is inappropriate.

The same holds true for Plaintiff's claim of excessive force once he was handcuffed. At the time of this incident, the law was well-established that an officer may not use gratuitous force against an inmate who has been subdued. See Giles, 571 F.3d at 326 ("[A]t the time of the incident in 2001, it was established that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued.") See also N.J.A.C. 10A: 3-3.2(b).

Plaintiff avers that he was hit and kicked while restrained on the ground. Clearly, a material issue of fact exists as to, first, whether Plaintiff had been restrained before the alleged use of excessive force, and second, if so, which officers engaged in force. Defendants urge the Court to rely upon the videotape of the incident pursuant to Scott v. Harris, 550 U.S. 372 (2007). However, where the videotape may be susceptible to multiple

8

reasonable interpretations or cannot clearly resolve the facts in dispute, as is the case here, summary judgment is inappropriate. See Patterson v. City of Wildwood, 354 Fed. Appx. 695, 698 (3d Cir. 2009).

**IV    Conclusion**

Accordingly, because accounts of the incident are in dispute, summary judgment on the basis of qualified immunity is denied as to Plaintiff's excessive force claims.


Dated: May 20, 2011             s/Renée Marie Bumb
                                RENÉE MARIE BUMB
                                United States District Judge

9